## COLLETT v. BRONX NAT. BANK.

(District Court, S. D. New York. October 29, 1912.)

BANKRUPTCY (§ 166*)—VOIDABLE PREFERENCE—REASONABLE CAUSE TO BE-LIEVE INSOLVENCY.

> A bankrupt, who was an officer of a bank, within four months prior to his bankruptcy, while insolvent and confined in jail on a charge of defrauding the bank, arranged with the cashier, who was his debtor, to pay certain notes which he owed to the bank. *Held,* that his intention to give the bank a preference was clear, and the payment was made un-der such circumstances as to put the bank on inquiry as to his intention and financial condition, and that in the absence of such inquiry it was chargeable with knowledge of the facts, or at least with reasonable cause to believe that a preference was intended, which rendered it voidable at suit of the trustee under Bankr. Act July 1, 1898, c. 541, § 60a, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), as amended by Act June 25, 1910, c. 412, § 11, 36 Stat. 842 (U. S. Comp. St. Supp. 1911, p. 1506).

> [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. § 166.*]

In Equity. Suit by Ralph L. Collett, trustee of Charles Belling, bankrupt, against the Bronx National Bank. Decree for complainant.

Sullivan & Cromwell, of New York City (Ralph L. Collett, of New York City, of counsel), for complainant.

John Hall Jones, of New York City, for defendant.

HAZEL, District Judge. The bankrupt, Charles Belling, on No-vember 16, 1910, was indebted to the Bronx National Bank, on his promissory notes and for conversion, in an amount exceeding $1,400. He was accused of forging a certificate of the defendant's stock, and on discovery was arrested. On November 17th, following the arrest, the cashier of the bank, one Harry Kolbe, at the request of the bank-rupt, the vice president of the bank, paid $1,400 owing by him to the bankrupt by applying it pro tanto upon the latter's indebtednesses to the bank. Was such payment a voidable preference, within the mean-ing of section 60a of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445])?

It must be conceded that the indebtednesses of the bankrupt to the Bronx National Bank, a creditor, were claims provable in bankruptcy, that the liability arose on antecedent obligations, and that the payment to the bank by the cashier of the sum of $1,400 to apply thereon was a transfer within the meaning of section 60a of the Bankruptcy Act.

Upon the question of insolvency, it is fairly shown by the proofs that the total assets of the bankrupt on November 16, 1910, amounted to $22,736, and his liabilities to $37,814.60. The defendant contends that the uncorroborated testimony of the bankrupt, as adduced on his examination in the bankruptcy court in relation to his debts and lia-bilities, should not be considered as proving his insolvency. I can conceive of no valid reason for this contention, and in the absence of evidence to the contrary it must be held as established by the proofs that the aggregate of the bankrupt's property was insufficient to pay his debts, and that he was therefore insolvent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

An intention on the part of the bankrupt while insolvent to give the bank a preference, by which it would receive on its provable claim a larger percentage than would other creditors of the same class, is sufficiently shown. Under section 60a of the Bankruptcy Act, prior to its amendment in the year 1903, to render the transaction voidable, it was necessary to prove such an intention. This is not such a case as Debus v. Yates (D. C.) 193 Fed. 427, wherein the bankrupt, who was engaged in the conduct of his business, though suspecting his insolvency, still believed that, notwithstanding his precarious financial condition, he would be able to continue and ultimately meet his obligations. Here the bankrupt at the time of giving a preference was confined in jail, and, probably fearing prosecution on a charge of converting a sum of money left with him for deposit in the bank, hastened to make restitution through the instrumentality of the cashier, his debtor, by satisfying the promissory notes which the bank held against him. Various officers of the bank knew of his dilemma. The cashier had full information regarding the accusation, and was probably aware of the bankrupt's financial condition. In any event, it appears that, in obedience to a telephone message from the bankrupt after his apprehension, the cashier discharged his obligations to the former by complying with his request to pay to the bank the amount owed by the cashier to the bankrupt.

Under such circumstances, the defendant must be deemed to have had reasonable cause to believe that it was receiving a preference. The debt was paid under circumstances which put it upon inquiry and prompted investigation of the bankrupt's financial condition and the intention with which the indebtedness was satisfied. In re McDonald (D. C.) 178 Fed. 487; In re Leader (D. C.) 26 Am. Bankr. Rep. 668, 190 Fed. 624. Nothing was done by either the bank or its officers towards making an investigation, and the presumption is warranted that by the payment to the bank of its indebtedness against the bankrupt a preference was intended, and that the defendant had reasonable cause to believe such was the intention.

The complainant is entitled to judgment for the amount paid, with interest, besides costs and disbursements, to be taxed. So ordered.